IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PROPST PROPERTIES LLC                    PLAINTIFF/COUNTER-
                                                DEFENDANT

v.                          No. 4:18-cv-511-DPM

RASOOL MOHAMMAD; SELECT SANDS
AMERICA CORPORATION; WESTBROOK
WILLOW LLC; ZIGURDS VITOLS;
and SELECT SANDS CORPORATION              DEFENDANTS

WESTBROOK WILLOW LLC                      COUNTER-CLAIMANT

## ORDER

**1.** The sand needed for hydraulic fracturing is big business. These parties' dealings have ended in court. Here are the distilled facts, which the Court takes as true for purposes of the motions to dismiss.

Propst owns land in Lawrence County. Because of proximate water, utilities, and a railroad, the land is well suited for sand processing plants. Propst eagerly sought to lease its property, which could accommodate several plants. It landed one in the summer of 2014. It had about nine other prospects and was negotiating with a few of them. Propst engaged Westbrook Willow to help. This limited liability company was supposed to "advise, negotiate, and provide other services related to the frac proppant business in and around Lawrence County, Arkansas, as reasonably requested by [Probst]."

№ *26 at 66*. The parties' agreement also authorized Westbrook Willow "to render similar services for other companies and organizations." № *26 at 67*. The LLC's point person was Zigurds Vitols, who made the deal with Propst as "president" and seems to have been the only Westbrook Willow employee involved. Vitols told Propst about his long and good experience on similar issues with Martin Marietta. In fact, that company had fired Vitols. Propst provided Westbrook Willow some business records: maps of local sand reserves, core drill sand test results, employee lists, and Propst's lease with the one processing company on board. Propst paid Westbrook Willow approximately $90,000 over the next several years. These consulting services, though, bore no fruit for Propst: no additional plant has leased part of its ground.

Instead, Vitols and Westbrook Willow developed a deepening relationship with the Select Sands entities. Select Sands Corporation is a Canada-based developer of materials, including frac sand. Its corporate predecessor was one of Propst's prospects. Rasool Mohammad was president of both that predecessor and Select Sands Corporation. He had had some direct talks with Propst for the predecessor. In the fall of 2014 — the dates will become important for limitations issues — Mohammad recruited Vitols to be a Select Sands board member. Mohammad and Vitols also hatched a secret plan, Probst alleges, that would bring Vitols into Select Sands's corporate

management. In the same press release announcing Vitols's appointment as a member of its board of directors, Select Sands announced test drilling on "Sandtown," property the company had recently acquired in northeast Arkansas. It's unclear exactly how far Sandtown is from Propst's property. But both are in northeast Arkansas, and the reasonable inference is that Propst hoped to get Select Sands to locate a Sandtown-related plant on Propst's site. Mohammad said in the press release that Vitols "will help advance the Company's frac sand project in Arkansas." № 26 at 100.

Shortly after Vitols was appointed to the Select Sands board in December 2014, a Propst corporate officer discussed the situation with him. Vitols assured her that his Select Sands directorship wouldn't interfere with his consulting work for Probst. He said nothing about a long-term plan for him to become a Select Sands corporate officer.

But that's what happened over the next two years, as Select Sands expanded its operations in northeast Arkansas. In July 2015, Select Sands appointed Vitols as chief operating officer. There was a press release. № 26 at 126. In October 2015, Select Sands's American subsidiary bought a sand processing plant approximately fifty miles from Sandtown. Again, there was a press release. № 26 at 157. The next month, Select Sands Corporation retained Westbrook Willow and Vitols to provide consulting services in Vitols's capacity as COO. № 26 at 133.

Late the next year, in December 2016, Select Sands did a corporate shuffle: Mohammad became president and COO of the American subsidiary; Vitols became CEO of the Canadian corporate parent. № 26 at 165. There was another press release.

Probst eventually sued Westbrook Willow in state court. In discovery, the company produced the Select Sands/Westbrook Willow/Vitols consulting agreement that followed Vitols's appointment to the COO position and the Select Sands/Vitols employment agreement for the CEO position. These agreements sparked expansion of the case.

In the consulting agreement, Vitols and the LLC promised that he would devote 25% of his time to Select Sands. The parties acknowledged that Vitols "and/or" Westbrook Willow "have a business relationship with Propst Properties but agrees that he has no interest in any silica sand facility or business that competes with [Select Sands] other than a potential commission that he has earned from the lease of a property by Propst Properties to American Sands[.]" № 26 at 136. (This was actually American Silica, the lessee in Propst's one successful lease made in the summer of 2014.) The COO agreement also contained non-competition and non-solicitation provisions. The first term limited Westbrook Willow's and Vitols's involvement with Select Sands's "mining or selling silica sands" competitors doing business within 300 miles of Sandtown. The second term barred the LLC and

Vitols from luring away all Select Sands's customers and prospects. № 26 at 140–42.

The CEO agreement had some different key provisions. Westbrook Willow was not a party. Vitols promised to work full time for the Select Sands entities. Select Sands acknowledged that "the Executive" — Vitols — has a 2014 agreement "with Propst Construction, a landlord in Black Rock, Arkansas for lands hosting a frac sand manufacturer" that entitled Vitols to a percentage of lease payments. № 26 at 176. The agreement contained broader non-competition and non-solicitation provisions: it covered all Select Sands's actual or prospective customers and competing companies in several states without any limitation based on proximity to Sandtown. № 26 at 173, 182–83.

In July 2018, after getting hold of these agreements and other information in discovery, Propst amended, bringing in Vitols, Mohammad, and Select Sands America. The case was then removed here. Faced with motions to dismiss, Propst filed its second amended complaint in September 2018, adding Select Sands Corporation. Westbrook Willow answered and counterclaimed. All the other defendants have moved to dismiss again.

**2.** Some general points. Vitols argues that Propst's second amended complaint violates Rule of Civil Procedure 8. At sixty-five pages, excluding attachments, the pleading is not short, but it is plain.

Most of the three hundred ninety allegations are concise. As the detailed briefing makes plain, Propst's pleading gives fair notice of what the company believes each defendant did wrong. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The three-year statute of limitations presents an obvious defense to some claims. The new parties were added in July and September of 2018. Everyone agrees that the three-year statute of limitations applies. Therefore, defendants argue, Probst's claims about anything that happened before July 2015 as to Vitols, Mohammad, and Select Sands America, and before September 2015 as to Select Sands Corporation, are too late. Given the multiple press releases from Select Sands about Vitols's employment and its acquisition of a processing plant near Sandtown, Propst will have a challenge proving that fraudulent concealment tolls the statute. But this issue is necessarily fact-bound. *Russenberger v. Thomas Pest Control, Inc.*, 2012 Ark. App. 86, at 10, 394 S.W.3d 303, 309. The Court can't conclude with confidence, at this point, that there is a solid limitations bar to any of Propst's claims. Propst may not be able to get around the press releases, but it has alleged enough about what Vitols and Westbrook Willow said and didn't say to delay a ruling on limitations until the record is more complete.

A more complete record on the corporate structure of Westbrook Willow and Select Sands is also needed. Whether there was more to

Westbrook Willow than Vitols is murky. The "and/or" in the COO agreement creates some ambiguity. And the CEO agreement says flat out that Vitols, not Westbrook Willow, is the one bound to Propst by agreement. Likewise, the relationship between Select Sands Corporation and Select Sands America is unclear. More facts about corporate formalities, and the parties' dealings, will help the Court address specific claims in due course.

**3.** Next, some particulars. Propst has pleaded enough about the who, what, where, and when of alleged fraud by Westbrook Willow and Vitols. There was the Martin Marietta misrepresentation. There was the allegedly misleading response (by Westbrook Willow, Vitols, or both) about Vitols's Select Sands directorship. And there was the gradual-integration plan from the winter of 2014–2015. Propst says it relied on Westbrook Willow and Vitols to recruit Select Sands and other lessees, but instead they helped the Select Sands entities develop a processing plant at another site. And, allegedly, they didn't do anything to recruit other companies who were competing with Select Sands to Propst's site. That's a case.

The claim for tortious interference by Mohammad and the Select Sands entities with the Propst/Westbrook Willow consulting agreement, and the related claim against all defendants for tortious interference with Propst's expectancy, go forward, too. Mohammad may drop out eventually. But Propst has pleaded enough to keep him

-7-

in for now. Propst says Mohammad acted in a personal capacity and as a corporate officer. On the expectancy, Propst has a plausible claim under the generous principle of *Stewart Title Guaranty Company v. American Abstract & Title Company*, 363 Ark. 530, 541–43, 215 S.W.3d 596, 601–03 (2005). We'll see what the proof shows about how solid Propst's expectations were. The no-exclusivity provision of the Propst/Westbrook Willow agreement is a problem for Propst's case. But, defendants have a similar problem in the no-solicitation and non-compete clauses of the Select Sands agreements. Select Sands's competitors were Propst's prospects. We'll see if there are enough facts for a jury to conclude that the Select Sands defendants' actions caused Propst's lack of success in recruiting other processors to its site.

Propst's replevin claim for its business-related documents is adequately pleaded and supported. *Payne v. Bruton*, 10 Ark. 53, 57 (1849). The conspiracy claim will sail, or not, depending on whether the company's other tort claims survive. It is plausible because they are. The Court doubts whether Propst can offer sufficient proof on punitives, but it's too soon to know. *Stein v. Lukas*, 308 Ark. 74, 77–78, 823 S.W.2d 832, 834 (1982).

\* \* \*

The motions to dismiss, № 35 & 37, are denied. Given the length of Propst's complaint, the moving defendants have until 25 March 2019 to answer.

So Ordered.

*D.P. Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

25 February 2019